## GEORGE S. GAINES v. ANN.

Where the plaintiff sued for the recovery of a slave, and obtained a writ of sequestration, and the defendant, before answering, suggested that the alleged slave was a free white person, and prayed that a writ of *habeas corpus* issue and that a guardian *ad litem* be appointed, which prayer was granted, and the main suit continued to await the issue of freedom, ordered to be made up and tried by a jury ; held, there was no error ; and judgment having been rendered in favor of the freedom of the alleged slave, held, that an appeal lay from such judgment, although the original suit was not disposed of by formal entry of judgment.

Lawful slavery is confined to the African race and their descendants.

Where the evidence was that the grandmother of the girl suing for freedom, was a mulatto, a slave; the mother a quarteroon, a slave ; and the father a white man ; against which was the testimony of two physicians, that they had examined the girl and could not detect any indications of the existence of African blood, but that a person who was only one eighth of the African blood, might not show any signs of the existence of such blood, though, in general, that degree of African blood would show itself, and that the appearance of the child, in cases of mixed blood, were much more likely to be in conformity with the father than the mother ; the jury having found a verdict that the girl was free, it was held that the motion for a new trial ought to have been sustained, and the judgment was reversed.

Appeal from Limestone ; taken to Tyler by agreement. Tried below before the Hon. Henry J. Jewett.

*Durant* and *Jennings*, for appellant.

*Gould* and *Neblett*, for appellee. There was no error in overruling the motion for new trial upon the ground that the verdict was contrary to the evidence. It was impossible to say what weight the jury gave the fact that the girl Ann was white. It was a question peculiarly within the province of the jury. The appellant occupied the position of the State on a criminal trial involving liberty, and in such cases the constitution of the State forbids a second trial. (Bill of rights, Art. 1, Sec. 12.)

LIPSCOMB, J. This case is somewhat embarassed from its connection with another, that must be regarded as entirely distinct. It will be necessary, for the purpose of removing the embarassment, to explain how it is, that they are embraced in this record.

The appellant in this suit, in this Court, brought an action in the Court below, against Thomas and Colton, to recover a negro girl, slave for life, alleged to have been taken from him by the defendants. He obtained a writ of sequestration, and the girl was taken by the Sheriff into his custody under the writ of sequestration. The defendants, without answering, made a suggestion to the Court, that the girl, the subject of the suit, was a free white girl, without negro blood, and moved the Court for the appointment of a guardian *ad litem*, to sustain her rights to her freedom, and for a writ of *habeas corpus* to bring the girl before him. Neblett & Gould, the appellees, were appointed guardians *ad litem*, and the writ of *habeas corpus* was issued. On the return of the *habeas corpus*, an issue was ordered by the Court, to try the question of the freedom of the girl. It appears that after the appellant had interposed his claim to the girl, alleging her to be a slave for life, and after the issue to try the girl's right to freedom, the record shows that by agreement of parties, " The said Gaines, plain-" tiff, takes upon himself the burthen of proof in establishing

" that the said girl is a slave by birth, and by consent of par-
" ties, the defendants have leave to take the custody of the
" said girl Ann, upon their giving bond and approved security
" to be judged by the plaintiff, conditioned that the said de-
" fendants produce the said girl Ann at the next Term of the
" Court, and that the said girl be treated humanely and be fur-
" nished with all the necessary clothing and food; said bond
" to be made payable to the plaintiff in the above entitled
" cause, which said bond shall be in the sum of fifteen hun-
" dred dollars, payable and conditioned as aforesaid. It is or-
" dered by the Court, that the depositions and evidence taken
" and filed in the above entitled case of Gaines v. Colton,
" Thomas and others, be used in evidence on the trial of the
" writ of *habeas corpus*, subject to defendant's exception. It is
" further ordered by the Court, that alias process issue for the
" defendants not served, and cause be continued."

After these proceedings, the issue of freedom was a distinct
suit from the original suit, and the final judgment on the issue,
could be appealed from, and was subject to revision, without
disposing of the original suit. At the next Term the issue
was tried and a verdict and judgment in favor of the freedom
of the girl Ann, from which the claimant appealed to this
Court.

The appellant has assigned distinct grounds of error,
amounting in all to fifteen, only two of which will be noticed
in disposing of the case. The appellant contends that the
Court below erred in directing the issue of freedom to be made
up and tried in this case. We do not believe this objection
can be sustained. There can be no question but the girl could
have had her right to freedom tried by an original action, or
by an issue, made up as in this case; and the course adopted
seems to commend itself as preferable, because it was speedier,
less expensive, and if found in her favor, would put an end to
the suit about her ownership. And here it may be remarked,
that the Court below very properly ordered the other suit to

be continued, as it was proper that it should not be tried, until this was finally acted upon and disposed of.

The most important question arises on the decision of the Court below refusing a new trial to the plaintiff on the ground that the verdict was not supported by the evidence. The question was not merely whether she was entitled to her freedom, because, if of the African race, she might still be entitled to her freedom, from having been born of a free mother, if so proven ; but it was, whether she was of the pure white race, or mixed with African blood and born of a slave mother. On the question of her condition of slavery, the doctrine is too well settled to require a reference to authority, that the offspring follows the condition of the mother. If the mother was a slave, so also would be the child, with this qualification, that the mother was in lawful slavery. If the mother was of the pure white race, unmixed with African blood, her being *de facto* held in slavery would not be lawful and could not entail her own illegal slavery upon her child. So if she was of Indian and not of African blood, she could not be held in slavery *de jure*. Lawful slavery is confined to the African race. The evidence in this case was clear and unequivocal, that the mother and grandmother of Ann were both slaves and of the African race ; that the grand mother was a mulatto, or half breed ; that the mother of Ann was a quarteroon, and slave at the birth of Ann ; that the reputed father of Ann was a white man, and she consequently was one eighth of the African blood. The evidence of her being pure white blood, was that of two medical gentlemen, who testified that they had examined her, and could not detect any of the indicia of the existence of African blood in her, but that a person who was only one eighth of the African blood, might not show any signs of the existence of that blood, though in general, that degree of the blood would show itself ; and that the appearance of the child, in cases of mixed blood, were much more likely to be in conformity with the father, than the mother.—

Gaines v. Ann.

Does this evidence contradict the positive fact of the mother being a slave and of the African race? We think not. The facts sworn to by the medical gentlemen may be true, and yet not in any way contrary to the fact proven, of the status of the mother. And the evidence of the witnesses who proved the facts of the mother being of the African race and a slave, is not impeached. We are therefore bound to conclude that the verdict of the jury, finding Ann to be of the pure white race, is not supported by the evidence; and it is not a case of conflicting evidence, where the verdict should not be disturbed.

This cannot fail to give rise to some grave reflections on the law as it now is, on this subject. The girl Ann is proved to be only one eighth of African blood, and the third generation, one of each being white, and is the last degree prohibited by law from giving evidence against a white person. Her child, if by a white man, would be a competent witness against a white person, but following the status of its mother, it would be a slave, and it would so descend *ad infinitum*, so long as the descent from a slave mother could be traced, though the blood should be of the smallest possible amount. Whether it is sound policy to permit the law to remain in its present state is a question to be answered by the wisdom of the Legislature, and not by us. Believing that the verdict in this case is not supported by the evidence, the judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.